UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PAUL A. STEPHENS, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:05-cv-0095-JDT-TAB |
| ) | |
| PAPA JOHN'S USA, INC., ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 35) and MOTION TO STRIKE (Doc. No. 44)**[1]

This litigation concerns a restaurant chain official who was fired after he admitted contacting an employee he supervised to see if she was going to file a sexual harassment claim against him. The Plaintiff, Paul A. Stephens, Jr., was the director of operations for the Defendant, Papa John's USA, Inc. ("Papa John's"). He alleges that Papa John's fired him because he was an African-American and an older employee. Papa John's says he was fired simply because he violated the company's Ethics Code and Workplace Harassment Policy when he confronted an employee about reports that she was going to file a harassment claim against him.

The firing occurred on August 21, 2004, and Mr. Stephens filed a complaint on January 19, 2005, bringing claims of racial discrimination under 42 U.S.C. § 1981 and

---

[1] This Entry is a matter of public record and will be made available on the court's web site. However, the discussion contained herein is not sufficiently novel to justify commercial publication.

Title VII, 42 U.S.C. § 2000e-2, and a claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623.[2]  On May 31, 2006, Papa John's filed a Motion for Summary Judgment (Doc. No. 35).  On September 21, 2006, it filed a Motion to Strike (Doc. No. 44), asking the court to strike all unsupported alleged facts from Mr. Stephen's response brief.

This court has jurisdiction over this litigation pursuant to 28 U.S.C. §§ 1331, 1343, and the parties have briefed the pending motions.  The court rules as follows.

## I. CORRECTION OF DEFENDANT PARTY'S NAME

Papa John's noted in its Answer to the Complaint and in subsequent briefs that Mr. Stephens incorrectly identified the company as "Papa Johns," rather than by its correct and complete name, "Papa John's USA, Inc."  Although Papa John's has not contested the Plaintiff's claims on this basis, the court finds that the caption of the case should reflect the true identity of the Defendant and hereby **ORDERS** that the court's records, this Entry, and any subsequent pleadings show the Defendant to be "Papa John's USA, Inc."

## II. BACKGROUND

Mr. Stephens is a black male citizen who was 52 years old at the time of the Complaint's filing.  (Compl. ¶ 52.)  A former master sergeant in the Air Force, where he

---

[2] Stephens cited Title VII and the ADEA generally in his Complaint; the cites to specific sections are by the court.

worked as an air traffic controller for 16 years, Mr. Stephens worked for Taco Bell from 1992 to 2000, serving at times as manager of international operations and district manager and overseeing restaurants in Oklahoma, Texas, Missouri, Europe, and Asia. (Stephens Dep. 7-9.)  To be closer to his ailing parents, he worked for his brother's dental practice and then hired on with Papa John's, a national pizza chain, in September 2002 as an area supervisor manager in Indianapolis.  (*Id.* at 14.)

After a company restructuring, Mr. Stephens became director of operations for seven Indianapolis area pizza stores.  (*Id.* at 16, 18.)  His duties included overseeing and training the general managers of these stores (who in turn oversaw assistant managers), controlling costs, maintaining quality, and marketing.  (*Id.* at 20-22, 34.)  Mr. Stephens made sure that all of his managers were familiar with the company's policies, including sexual harassment.  (*Id.* at 29-34.)

When Mr. Stephens started at Papa John's, the company had 85 operations directors nationally.  (*Id.* at 24.)  At the time of his firing, Mr. Stephens was one of the top five directors in the country.  (*Id.* at 20.)  His supervisor was Bill Mitchell, a company vice president, and he also had contact with Lynn McQuillen, the company's People Services Director who was responsible for training and human resources issues in Mr. Stephens' area.  (McQuillen Dep. 10, 14.)

In February 2004, a general manager at one of his stores told Mr. Stephens that, according to a "rumor," an assistant manager at one of this stores, Karen VanSlyke,

3

was unhappy because Mr. Stephens had sexually harassed her.[3]  (Stephens Dep. 92, 110.)  He did not ask the general manager the source of his information.  (*Id.* at 94, 97.)  Rather, in March 2004, after Mrs. VanSlyke returned from vacation and while auditing or doing some marketing at one of the stores, he questioned her about what he described as this "third-party rumor."  (*Id.* at 91-92, 97-99.)  The conversation occurred at one of the stores where Mr. Stephens was doing some auditing or marketing and Mrs. VanSlyke "happened to be there."  (*Id.* at 98.)

Mr. Stephens said he advised Mrs. VanSlyke that it was against policy to spread rumors and that if she believed he had harassed her, she should call a higher company official or its human resources department.  (*Id.* at 99.)  She told him she did not make any complaint or statements about sexual harassment.  (*Id.*)  She "continued to elaborate on that" and at the end of the conversation, Mr. Stephens "still gave her the option to call Lynn [McQuillen] while [Mr. Stephens] was standing there or to go home and call Lynn."  (*Id.*)

About five months later, Mrs. VanSlyke filed a sexual harassment complaint against Mr. Stephens.  (Def.'s Ex. 12.)  She called Mr. McQuillen on a Saturday, August 14, 2004, and said that Mr. Stephens had made inappropriate remarks and physical contacts with her.  (*Id.*)  Jeanne Thorpe, who was Director of Corporate Restaurant Operations and McQuillen's supervisor, led the investigation.  (McQuillen Dep. 21.)  The

---

[3] Mrs. VanSlyke's name appears both as one word and two in the record before the court. The court has used one word for her last name as this is how she apparently printed her name in capital letters on a training sign-in sheet.  (*See* Def.'s Ex. 9.)  The court has capitalized the "S" because this appears to be the more usual custom and the style used by the parties.

company labeled the complaint as unfounded.  McQuillen said this was because "there was enough discrepancy in this thing that it became more of a he said, she said matter." (*Id.* at 22.)  Nonetheless, McQuillen said he and Thorpe decided, on the basis of Mrs. VanSlyke's complaint and "other things," to transfer Mr. Stephens, who expressed some interest in moving.  (*Id.* at 43-44.)

Mr. Stephens then told his supervisors about his earlier conversation with Mrs. VanSlyke.  In a written statement, labeled "Amendment Statement for Jeanne Thorpe, Director Corporate People Services 8/17/04," he said the conversation occurred in May 2004, not March 2004.  (Def.'s Ex. 11.)  He said that managers at two stores had told him that Mrs. VanSlyke was going to file or had already filed a complaint about sexual misconduct against him.  (*Id.*)  He acknowledged confronting her about whether he had ever sexually harassed her, and suggesting that if she was unsure, they should both call McQuillen "and clear this up ASAP."  (*Id.*)  He also said she could call McQuillen from her home.  (*Id.*)

Following the submission of this written statement, McQuillen and Bill Mitchell met with Mr. Stephens on August 21, 2004, and fired him for his failure to report a claim of sexual harassment and for his decision to investigate the claim himself, in violation of the company's code of ethics.  (Stephens' Dep. 111-18; Def.'s Ex. 13.)  "He did not bring that forward and he violated our reporting policy. . . . He investigated himself, there was nothing we could do."  (McQuillen Dep. 44.)

## III.  STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  An issue of fact is material if it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is genuine if a reasonable fact finder could find for the nonmoving party.  *Hottenroth v. Village of Slinger*, 388 F.3d. 1015, 1027 (7th Cir. 2004).  If there is evidence that would allow a reasonable jury to return a verdict for the non-moving party, then summary judgment is not appropriate.  *Id.*

When deciding a motion for summary judgment, the court must consider all evidence, and draw all reasonable inferences therefrom, in the light most favorable to the nonmoving party.  *See Anderson*, 477 U.S. at 255.  The moving party "bears the initial responsibility" of identifying specific facts within the record that "demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323.  When a motion for summary judgment is made and properly supported, the non-moving party may not rest on the pleadings or denials but must set forth the specific evidence showing there is a genuine issue of material fact that requires a trial.  Fed. R. Civ. P. 56(e).  A mere scintilla of evidence will not do.  *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001) (citing *Anderson*, 477 U.S. at 252).  "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or

defenses . . . ." *Celotex*, 477 at 323-24. At the summary judgment stage, the judge's function is "to determine where there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## IV.  DISCUSSION

### A.  Motion to Strike Unsupported Factual Allegations

Papa John's asserts that Mr. Stephens' response to its summary judgment motion "is replete with unsupported alleged facts," and it asks the court to strike these facts. (Def.'s Consolidated Mot. & Reply 1-2). Mr. Stephens responds that some of the facts cited by Papa John's are supported by deposition testimony that would be admissible under the Federal Rules of Evidence. (Pl.'s Surreply 1-4.)

The summary judgment standard requires a party seeking to defeat summary judgment to present admissible evidence that raises a genuine issue of material fact. *See, e.g.*, *Schindler v. Seiler*, 474 F.3d 1008, 1010 (7th Cir. 2007). However, filing a motion asking the court, in essence, to redact Mr. Stephens' brief is not productive when a party's argument will suffice to draw the court's attention to the evidence or lack of evidence on material issues. For this reason, motions to strike are disfavored under local rule, S.D. Ind. L.R. 56.1(f). *See also Redwood v. Dobson*, 476 F.3d 462, 471 (7th Cir. 2007) (finding such motions at the appellate level to be a waste of time because briefs provide an adequate means of contesting statements of facts). Accordingly, Papa John's Motion to Strike (Doc. No. 44) is **DENIED**, recognizing that the court will, to the extent necessary, address the evidentiary support of either party's factual assertions.

### B.  The Racial and Age Discrimination Claims

Although Mr. Stephens has brought separate claims under § 1981, Title VII, and the ADEA, they are analyzed similarly.  *See Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 695 (7th Cir. 2006).  To prevail on a claim of racial or age discrimination, a discharged employee must establish his employer's discriminatory intent either through direct proof or indirect proof.  *Id.*; *see also Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 404 (7th Cir. 2007).

Under the direct method, Mr. Stephens must present admissible evidence, either direct or circumstantial, that points directly at Papa John's alleged discriminatory motivation to fire him.  *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006).  In this case, the record is bare of any direct evidence, such as an admission by Papa John's that Mr. Stephens' race or age was a factor in its decision to fire him.  Nor is there any circumstantial evidence, such as suspicious timing, remarks or behavior, from which a rational trier of fact could directly infer a discriminatory intent behind the decision to fire Mr. Stephens.  *See Hemsworth v. Quotesmith.Com*, 476 F.3d 487, 490-91 (7th Cir. 2007) (distinguishing the use of circumstantial evidence under the direct method from the use of such evidence under the indirect method of proof).  Just the opposite.  The record shows the company officials were planning to keep Mr. Stephens as an employee until he submitted his amended statement acknowledging that he had

been told about Mrs. VanSlyke's intent to file a complaint and that he subsequently confronted her about it.[4]

Under the indirect method, which is the argument that Stephens makes (see Pl.'s Br. Opp'n 6-12), a plaintiff establishes discrimination indirectly through the burden shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). The plaintiff must first present a prima facie case of intentional discrimination. *Moser v. Ind. Dep't of Corrs.*, 406 F.3d 895, 900 (7th Cir. 2005). If the plaintiff meets this burden, "a presumption of discrimination arises, and the employer must articulate a legitimate and non-discriminatory reason" for the employer's contested act. *Id.* (citing *Stockett v. Muncie Ind. Transit Sys.*, 221 F.3d 997, 1001 (7th Cir. 2000)). The burden then shifts back to the plaintiff to show that the employer's stated reasons were only a pretext for discrimination – more specifically, a phony reason. *Paul v. Theda Med. Ctr.*, 465 F.3d 790, 794 (7th Cir. 2006).

---

[4] Circumstantial evidence is scattered throughout Mr. Stephens' deposition that could be used to support, or rebut, inferences of racial animus on the part of company officials. For example, Mr. Stephens alludes to the company's failure to discipline Mrs. Van Slykes and two other employees, David R. Conner, who was dating another worker, and Ed Lyons, who allegedly made sexual and racial comments during a general managers meeting. (*See* Stephens Dep. 150-51, 168-170.) However, he also stated that, aside from the treatment of these individuals, Mr. McQuillen had never given any indication that he made decisions based on someone's race or age. (*Id.* at 171-72.) Likewise, he testified that he had no reason to believe that Mrs. Thorpe conducted her interview of him on the basis of his race. (*Id.* at 128.)
 Mr. Stephens also testified that only three of Papa John's 85 operations directors were black and only one was a woman, who was white, at the time of his hiring, and that only one black operations director remained when he was fired. (*Id.* at 24.)
 Given that Mr. Stephens did not argue discriminatory intent under the direct method, the court will not comb the record or further consider his somewhat ambiguous testimony.

The *McDonnell Douglas* framework is generally a means for determining whether a plaintiff, who always bears the ultimate burden of proof, should be allowed to proceed to trial. *Chi. Dist. Council of Carpenters Pension Fund. v. Reinke Insulation Co.*, 347 F.3d 262, 265 (7th Cir. 2003). Summary judgment for the defendant is appropriate if the plaintiff fails to establish a prima facie case or, having established a prima facie case, fails to present "evidence sufficient to enable a trier of fact to find that the employer's proffered explanation is pretextual." *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 326 (7th Cir. 2002).

*1. Prima Facie Case*

Mr. Stephens and Papa John's have offered two different formulations of the prima facie case. This is possible because the *McDonnell Douglas* framework is not a rigid mechanized formula for which there are hard and fast rules about what evidence must be considered. *Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1264 (7th Cir. 1993) (citing *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)).

Mr. Stephens suggests he need only show that (1) he is a member of a protected class, (2) he was meeting Papa John's legitimate expectations, (3) he suffered an adverse employment action, and (4) Papa John's sought to replace him. (Pl.'s Br. 7.)

This prima facie case fairly restates the elements in *McDonnell Douglas*, which concerned a discriminatory hiring following a reduction in force.[5]  *See McDonnell*

---

[5] *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467 (2002), a case cited by Mr. Stephens,
(continued...)

10

*Douglas*, 411 U.S. at 802.  And several Seventh Circuit panels have adopted these elements for the prima facie case in discriminatory firing cases.  *See Flores v. Preferred Technical Group*, 182 F.3d 512, 515 (7th Cir. 1999); *Essex v. United Parcel Serv., Inc.*, 111 F.3d 1304, 1309 (7th Cir. 1997); *Mills v. First Fed. Sav. & Loan Ass'n*, 83 F.3d 833, 843 (7th Cir. 1996).

Papa John's agrees except for the fourth element.  Under its formulation, to show a prima facie case, it is not sufficient to show that Papa John's replaced him.  Instead, Mr. Stephens must show that, in being fired for alleged misconduct, he was treated less favorably than a similarly situated person who was younger, not black, or both.  (*See* Def.'s Br. Supp. 5.)  This is the more usual approach of the Seventh Circuit in employee firing cases. *See, e.g.*, *Luks v. Baxter Healthcare Corp.*, 467 F.3d 1049, 1052 (7th Cir. 2006); *Ptasznik*, 464 F.3d at 696; *Little v. Ill. Dep't of Revenue*, 369 F.3d 1007, 1012 (7th Cir. 2004); *Jones v. Union Pac. R.R. Co.*, 302 F.3d 735, 741 (7th Cir. 2002).  To make a prima facie case, the employee must show disparate treatment of another employee under circumstances sufficiently similar to suggest that the discrepancies resulted from the employer's discriminatory motive.  *See Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000).

The difference between these standards is initially – but not ultimately – of importance because the purpose of a prima facie case is to show the existence of at least some evidence creating an inference of a discriminatory motive for the employer's

---

[5](...continued)
also concerned an employee's claim of discriminatory termination in a layoff.

decision.  *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996).  Or, as the Seventh Circuit explained, "[a]ny demonstration strong enough to support a judgment in the plaintiff's favor if the employer remains silent will do, even if the proof does not fit into a set of pigeonholes."  *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996).

Mr. Stephens has failed to present evidence that would support an inference of a discriminatory motive.  In his brief, he has directed attention to the company's failure to discipline David R. Conner, another director of operations, for having an extra-marital affair with another company employee.  (Pl.'s Br. Opp'n 12-13).  However, the company policy merely discouraged dating between employees and only prohibits dating between a manager and their direct or indirect subordinates.  (McQuillen Dep. 31-32, 49-50 and McQuillen Dep. Ex. 5 (Doc. No. 42-10 at 4).)  Mr. Stephens' own evidence indicates that Mr. Conner's relationship was consensual and did not violate company policy.  (*See* McQuillen Dep. 51.)  The company's failure to discipline Mr. Conner does not, therefore, raise any inferences of racial or age discrimination.  Rather it merely shows one of the lines that Papa John's drew in regulating the internal social relationships of its employees.

With regard to his proffered prima facie case, Mr. Stephens has shown that he is a member of a protected class (two in fact), that he suffered an adverse action, and that Papa John's replaced him.  However, these elements also do not raise any inferences of discrimination, given the disagreement about whether he was meeting the legitimate

12

expectations of Papa John's upon learning that Mrs. VanSlyke might be filing a sexual harassment claim against him.

The Seventh Circuit has made allowances for a prima facie case when the employee was meeting his employer's expectations but for the alleged misconduct that led to the employer's firing. In such cases, the issue of legitimate expectations and pretext merge. *See e.g.*, *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 886 (7th Cir. 2001) (stating that the issue of satisfactory job performance often focuses on the same circumstances as must be scrutinized with respect to the matter of pretext). The Seventh Circuit has therefore directed that a court may assume the existence of a prima facie case "or consider part two of the test along with the issue of pretext, because many times the issues are intertwined." *Jones*, 302 F.3d at 742. Yet in nearly all these cases, the court was analyzing the employee's claim under the prima facie case requiring evidence of more favorable treatment of a "similarly situated" employee, *see, e.g.*, *Vakharia v. Swedish Covenent Hosp.*, 190 F.3d 799, 806 (7th Cir. 1999), or the plaintiff had presented at least some evidence of disparate treatment, *see, e.g.*, *Flores*, 182 F.3d at 514. It was such evidence that created an inference of discriminatory intent, establishing the plaintiff's prima facie case and allowing the court to move to the issue of pretext. *See also Peele*, 288 F.3d at 329.

Here, Mr. Stephens has not presented any evidence of disparate treatment suggesting discriminatory intent. In the Complaint, Mr. Stephens alludes to the disparate treatment of Mrs. VanSlyke, noting that she also failed to report immediately her concern of sexual harassment to a manager or director and conducted her own

13

investigation by soliciting statements and interviewing crew members.[6] (*See* Compl. ¶¶ 21-22.) However, a discrepancy in the treatment of an alleged victim and an accused supervisor would not raise an inference of discrimination. As Mr. McQuillen testified at deposition, Papa John's does not discipline alleged victims for failure to report sexual harassment. (McQuillen Dep. 45.) Differences between the company's response to Mr. Stephens's alleged misconduct and its handling of Mrs. VanSlyke or Mr. Connor, as discussed above, are not sufficient evidence to create an inference of discrimination. Mr. Stephens has not established a prima facie case

*2. Pretext*

Even were the court to find that Mr. Stephens had met the first step of the *McDonnell Douglas* method of indirect proof, it would have to find that Mr. Stephens had not provided sufficient evidence of pretext – that Papa John's reason for firing him was phony. *See, e.g.*, *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 417 (7th Cir. 2006) (stating that if a plaintiff can show that employer's actual reason was not the stated ground, the case cannot be resolved by summary judgment because the trier of fact would be entitled to infer a discriminatory motive). "In order to demonstrate a material issue of fact as to pretext, a plaintiff must show that either (1) it is more likely that a discriminatory reason motivated the employer than the proffered non-discriminatory

---

[6] Mr. Stephens does not resurrect these contentions in his brief although he notes that Mrs. VanSlyke did not report a sexual harassment complaint against him until August 14, 2004. (Pl.'s Br. Opp'n 3.)

reason or (2) that an employer's explanation is not credible." *Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004).

Mr. Stephens suggests several reasons why Papa John's stated reason for firing him was pretextual. First, he says that he did not violate Papa John's workplace policies and ethic codes because no one ever reported a claim of sexual harassment to him, only rumors. (Pl.'s Br. Opp'n 9-10.) Second, he claims that Papa John's cannot be believed because it "has shifted and changed its reason for terminating" him. (*Id.* at 10.) Third, he points to Papa John's failure to identify the managers who reported the rumors to him as evidence that the reason was phony. (*Id.* at 11-12.) None of these arguments are persuasive.

The distinction that Mr. Stephens makes between rumors and reports of sexual harassment is immaterial. To establish pretext, Mr. Stephens must provide facts establishing Papa Johns's disbelief in its stated reasons. Whether or not Papa John's was applying its workplace harassment policy correctly, as Mr. Stephens or a person outside the company might apply it, does not establish its sincerity or lack of sincerity. Mr. McQuillen testified that Papa John's does not distinguish between reports and reports of sexual harassment. (McQuillen Dep. 39-40.) Not only does Mr. Stephens fail to provide any evidence that this was not the case, any policy to the contrary could easily create liability issues for a company. *See, e.g.*, *Burlington Indus., Inc., v. Ellerth*, 524 U.S. 742, 759 (1998) (stating that a employer may be liable for a harasser's conduct if it knew or should have known about the conduct but failed to stop it).

15

Mr. Stephens' claim that Papa John's should be disbelieved because it has changed its reasons for firing him is equally groundless.  The evidence, including the termination letter that he signed (Def.'s Ex. 13), demonstrates consistency in the company's concern over his failure to report the "rumors" and his decision to question Mrs. VanSlyke himself.  (*See* Thorpe Aff. ¶ 6; McQuillen Dep. 44.)  Mr. Stephens' was told initially that his conduct violated the company's Code of Ethics, which incorporated the company's workplace harassment policy, and the employee handbook.  (*See* Def.'s Exs. 6, 13.)  Moreover, changes in the violations attributed to his actions are irrelevant if the misconduct remains the same.  Similarly, Mrs. VanSlyke's recollection that Mr. Stephens was fired as a result of the investigation into her complaint does not contradict Papa John's stated reasons.  (*See* VanSlyke Dep. 28-29.)  Whether or not Papa John's officials found her complaint actionable by itself does not make her statement untrue, as Mr. Stephens claims.  (See Pl.'s Br. Opp'n 11.)  Company officials investigated her complaint, received Mr. Stephens' Amendment Statement during the course of that investigation, and fired him as a result.

Finally Mr. Stephens suggests Papa John's should not be believed because it failed to talk to the managers who reported the alleged rumors of harassment to him, instead relying on his admissions in his Amendment Statement.  (*Id.* at 11-12.)  He argues that had the company actually believed that a report of sexual harassment had been made, it would have counseled or retrained these managers on the proper reporting procedures.  (*Id.* at 12.)  Mr. Stephens fails to direct the court to any evidence showing that such retraining did not occur at some point.  Nor, as Papa John's points

16

out, did the company have any reason to doubt his Amendment Statement. The adequacy of its investigation is also immaterial. *See Hudson*, 375 F.3d at 561 (stating that the court does not sit as a super personnel board, second-guessing the way a defendant conducts its business),

The troubling aspect regarding all of Mr. Stephens' arguments is that if any inferences were to be drawn, the evidence supports the conclusion that Mr. Stephens learned about an employee's intent to file a sexual harassment claim and, by confronting her directly at a store, succeeded in intimidating her to the point that she delayed filing her complaint by several months. A supervisor who confronts a subordinate, telling her that he "can't have rumors in the stores" and that it is against company policy to spread rumors, could easily be seen as warning that employee to remain quiet or face disciplinary action for rumor-mongering. Likewise, his semi-public suggestion to Mrs. VanSlyke to call Mr. McQuillen might be interpreted as "Go ahead and call my friend but it will not do you any good."

Such a conclusion cannot be drawn in a summary judgment motion where all inferences must be drawn in the non-moving party's favor. However, his arguments demonstrate a lack of understanding about the nature of sexual harassment in the workplace. The strict enforcement of workplace harassment policies such as Papa John's are designed just as much for the protection of innocent managers, which Mr. Stephens claims to be, as they are for the protection of employees, the company's reputation, and the corporate pocketbook. His distinction between "reports" of sexual

harassment and "rumors" of sexual harassment, which underlies all of his arguments, is fundamentally unsound.

Mr. Stephens has not established a prima facie case of racial or age discrimination. He has not shown any evidence suggesting any insincerity on the part of Papa John's. He has not provided any material evidence of discriminatory intent.

## V.  CONCLUSION

For the reasons discussed above, the **GRANTS** Defendant's Motion for Summary Judgment (Doc. No. 35). Accordingly, the court will **DISMISS WITH PREJUDICE** Paul A. Stephens, Jr.'s claims against Papa John's USA, Inc. Judgment will be entered by separate order.

ALL OF WHICH IS ENTERED this 28th day of March 2007.

_____
John Daniel Tinder, Judge
United States District Court

Copies to:

Magistrate Judge Tim A. Baker

Gregory A. Stowers
STOWERS & WEDDLE PC
gstowers@swh-law.com

Kelley Bertoux Creveling
BAKER & DANIELS
kbcrevel@bakerd.com

Alan L. McLaughlin
BAKER & DANIELS
alan.mclaughlin@bakerd.com